UNITED STATES of America, Plaintiff,

v.

Rigoberto LOPEZ–BARRON, Rikki Mazzetti–Keel, Martin Rivera–Huerta, Hector J. Cota, Kim Walker, Jake Stokes, Jr., Lee Scoggins, Carol Jones, Hector Manuel Perez–Fregosa, Alfred Lopez, Willie Ray Jackson, Maria Emma Gonzalez de Mendoza, Defendants.

Crim. Nos. 87–1309–K, 87–1329–K, 87–1338–K, 87–1363–K, 87–1374–K, 87–1415–K and 87–1291–K.

United States District Court, S.D. California.

Feb. 26, 1988.

Roger Haines, Asst. U.S. Atty., San Diego, Ca., for the U.S.

Mark Adams, San Diego, Ca., for Lopez–Barron.

KEEP, District Judge.

The Court: All right. At this time then I am going to give to you another one of those long, boring, oral rulings.

In ruling on the motions to hold unconstitutional the guidelines, I join in the "order granting motion to invalidate the guidelines promulgated by the United States Sentencing Commission," issued by the Honorable Rudi M. Brewster February 18, 1988. I concur in his thoughtful decision and I do want to incorporate it in this oral ruling.

By my comments this morning, I wish to supplement Judge Brewster's decision and ruling on the motion. I will discuss a few issues which he did not address or expand on some that he did. Because of the fact that this is a supplementary ruling, it will of necessity be choppy, as well as long and boring.

First as to ripeness. I agree with Judge Brewster that this case is ripe for the reasons that he stated in his opinion. However, among the cases before me today is Mr. Espinoza's case, Miss Millsaps, of the *United States v. Gonzalez*, 87–1291–K. Defendant Ms. Gonzalez has joined the constitutional challenge to the guidelines. She is due to be sentenced today. Her offense

took place after November the 1st, 1987, so she is due to be sentenced this morning under the guidelines. The probation report places her sentencing range at 57 to 71 months, or at a range consistent with the mandatory minimum period of time she must serve since her offenses are ones of which she has to do a mandatory minimum of five years. Nevertheless, the guidelines clearly impact on Ms. Gonzalez because, among other things, they significantly reduce the amount of good time she is eligible to receive. Hence, although I hold this issue is ripe as to all the defendants before me this morning, by any existing definition of ripeness, the constitutional challenge is ripe as to defendant Gonzalez.

The first area that I will discuss is the Congressional placement of the Commission in the Judicial Branch.

As Judge Brewster notes in his opinion, there are serious separation of powers problems caused by the Sentencing Commission being placed in the Judicial Branch. I hold the Commission is unconstitutionally placed in the Judicial Branch because the composition of the Commission, the duties of the Commission, and the President's removal power over members of the Commission violate separation of powers. I add the following comments to those of Judge Brewster.

In its amicus brief, the Commission justifies the presence of the Commission within the Judicial Branch by comparing it with other roles some Justices have served, such as Ambassador or Secretary of State, or with other Committees within the Judicial Branch which serve nonadjudicatory roles, such as the Judiciary Committees which have created the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

I note that analogizing to other roles Justices may have served, such as an Ambassador, is of little assistance. First, no cases were cited that indicated those roles were challenged on separation of powers grounds. And, as an aside, in regard to one of the few modern-day examples that were provided, the record before the court shows that Chief Justice Earl Warren was extremely concerned about his role on the Warren Commission and concerned that it violated separation of power principles, but was implored, presumably on National interest grounds, to serve anyway. Additionally, these Extra–Judicial roles, including Warren's, are distinguishable because they did not involve a Justice making substantive law.

None of the Judiciary Committee examples cited by the Commission, such at the Federal Rules Committee, are Committees that are mandated by Congress, composed of Judges and Nonjudges, with membership decided by the President pursuant to the instructions of Congress and with members of the Committee being subject to removal by the President. I concede the fact that such a Commission has not existed in the past does not mean it is unconstitutional. But since there is no precedent, in seeking guidance as to the Commission's validity constitutionally speaking, one must look at the intent of the founders in creating the three-branch government—the separation of powers and check and balance system created in Articles I, II and III of the Constitution.

Looking at original intent has become a controversial approach to adjudicating, particularly in this year of Supreme Court appointments. Nevertheless, when dealing with the somewhat elusive concept of separation of powers, I believe an analysis of the general intent of the founders in creating three discrete branches of Government is helpful. Among other things, the intent of the founders indicates as to the Judiciary, the founders desired an impartial and independent Judiciary. And I rely on the Federalist No. 78 at 469 and No. 39 at 246. That is why, for example, Federal Judges have no veto power, can only decide cases or controversies, cannot render advisory decisions and have lifetime tenure.

Within this historical framework, I hold the present Commission created by and empowered by Congress, appointed by the President and subject to his removal, comprised of three Article III Judges and four Nonjudges, and assigned the power of developing a set of sentencing rules which

bind the entire Federal Judiciary violates separation of powers.

■ Supplementing Judge Brewster's reasoning, I add the following. The independence of the Judiciary is offended by a Committee composed of at least three Federal Judges and at present four Nonjudges, since a majority of the Commission has no lifetime tenure nor Article III status. The independence and impartiality of the Judiciary is offended by a Committee whose members are appointed by, subject to reappointment by, and subject to removal by the President. Such appointment and removal power creates at the very least the appearance that a significantly empowered Judiciary Committee is subject to the control of the Chief Executive.

■ The impartiality of the Judiciary is offended also by a Judicial Committee whose duty is to develop a mandatory set of rules which will determine by their application what sentence a Judge imposes. Basically, in creating a Judiciary, the founders created a branch of government which was not to be involved in legislating, using that term broadly, but in adjudicating. As stated in *I.N.S. v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317, quote:

"The hydraulic pressure inherent within each of the three separate branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted."

The Commission's analogy to existing Judicial Commissions and Committees I hold fails because the aims and functions of the Sentencing Commission are wholly different from the normal role of a nonadjudicatory body within the Judicial Branch, and I hold the difference is constitutionally fatal. Sentencing guidelines are substantive. *Miller v. Florida*, —— U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351. Therefore, under existing law, it is improper for a Judicial Commission to have rule-making powers in regard thereto. And that's *Sibbach v. Wilson & Company*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479. The Commission attempts to justify its role by asserting that the guidelines regulate only remedies and affect only the actions of Judges; hence, the Commission argues this rule-making is indistinguishable from promulgating Judicial rules such as the Federal Rules of Civil Procedure. At pages 41 and 42 of their brief, the Commission concedes that there are limits on Congress' ability to delegate rule-making to the Judicial Branch. They state the court cannot promulgate binding antitrust guidelines. They explain, quote:

"The implementation of a statute through rule-making that creates rights and obligations that bind the general public rather than the courts has never been thought to be a Judicial function."

In response, I note that the implementation of a statute through rule-making that binds the entire Judiciary in the matter of what sentences will be imposed has never been thought to be a Judicial function either. Further, I note no law supports the Commission's remedies versus rights and obligations distinction. The only case cited for that proposition was *Hanna v. Plumer*, 380 U.S. 460, 476, 85 S.Ct. 1136, 1146, 14 L.Ed.2d 8, and specifically the concurring opinion of Judge Harlan.

The majority in *Hanna* held it was improper to hold a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state created rights because so holding would, quote, disembowel, end quote, Congress' grant of power in the rules enabling act. In his concurrence, which the Commission relied upon, Harlan called this standard the, quote, arguably procedural standard, end quote, and was concerned it was too liberal in that it gave the Judiciary too much authority for rule-making. Hence, it is inapposite and ironic for the Commission to quote Harlan to support it's rights and obligations theory.

I concede the Federal Rules of Evidence and the Federal Rules of Civil Procedure can, by their imposition, affect substantive rights; however, that affect is secondary. The aim of such rules is to establish procedures that structure how courts decide cases or controversies. On the other hand, the aim of the guidelines is to affect substantive rights of defendants—the substantive effect is not secondary, for a chief aim

of the guideline is to standardize sentences that defendants will receive. The guidelines are not a body of rules detailing the procedure of sentencing, as, for example, rules detailing the contents of a probation report. They are a body of rules which mandate what sentence Judges must impose and define when Judges can depart from those rules. They also tell litigants when they can appeal and what issues they can appeal.

Hence, under *Miller* and *Sibbach,* I hold that the law creating the Commission was an unconstitutional delegation of power to the Judiciary because it violates separation of powers for a Judiciary Committee to make substantive sentencing rules. I hold that a Commission within the Judiciary, composed of Judges and Nonjudges appointed by the President, removable by the President, and empowered to establish binding rules which substantively affect the rights of all criminal defendants, offends notions of separation of powers, both because of its composition and its authority.

▪ Even if the guidelines could be construed in a constitutional fashion, so as to make them inoffensive to the principle of separation of powers as that principle applies to the composition and authority of the Commission, the Commission would still be unconstitutional in light of the removal power of the President. In *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583, the Supreme Court found Congress could not retain removal powers over the comptroller general because he was exercising Executive function. Similarly, if the sentencing Commission is performing Judicial functions, as the Commission contends, then the existence of the President's removal power makes the Commission unconstitutional under *Bowsher.* The Commission unpersuasively tries to distinguish the removal power of the President in the instant action from that of Congress in *Bowsher.* I note the removal language in the two statutes is almost identical and the removal power in this case actually appears more threatening given the ability of the President to remove Commissioners single-

handedly in contrast to the two-house procedure subject to Presidential Veto that was required by the statute analyzed in *Bowsher.*

The Commission suggests that the court sever the removal section of the statute if the court is troubled by the President's removal power. This purported solution is unworkable. First, I hold this approach would be an inappropriate interference by the court with congressional intent—a serious impediment to severability which was eloquently discussed by the Commission in their opposition arguments to the Government's argument to sever the Commission from the Judicial Branch and which argument is further discussed herein. Second, there is a practical problem with severance of the President's removal power. If such is severed, how would an incompetent Commission member be removed? This court knows of no removal procedure to fall back upon and none has been cited by the parties. Hence, I reject that proposed solution.

In sum, I hold it was unconstitutional to place the Commission in the Judicial Branch because of the composition, the duties and the President's removal power.

▪ In its brief, the Government argues that the Commission should be transferred to the Executive Branch because it is performing an Executive function. At oral argument, the attorney for the Justice Department amended this position and contended that the Commission should remain in the Judicial Branch but should be viewed as performing Executive functions within the Judicial Branch and constitutionally analyzed in that manner. I hold neither of these theories save the guidelines on constitutional grounds. In regard to severance, it is clear that it was the intent of Congress to place the Commission in the Judicial Branch. Therefore, it is inappropriate for this court to rewrite the statute. And that is *Commodity Futures Trading Commission v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675. The legislative history of the statute demonstrates congress wanted the Commission to remain in the Judicial Branch to insure that sentenc-

ing remain primarily a Judicial function. That's the Senate Report at 159, the Senate Report at 54, the Senate Report No. 98–225, 98th Congress, first session, U.S.Code Cong. & Admin.News 1984, p. 3182.

Although it is true that Federal Statutes are to be construed so as to avoid serious doubts of their constitutionality—and that is *Machinists v. Street*, 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141—quote:

"It is equally true, however, that this Canon of construction does not give a court the prerogative to ignore the legislative will in order to avoid constitutional ajudication; 'although this court will strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of the statute or judicially rewriting it.' "

*Aptheker v. Secretary of State*, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992, quoting *Scales v. United States*, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782.

Hence, to put this Commission within the Executive Branch would in fact violate the quote that I just read you from scales as quoted in *Aptheker*, because not only would the court have to obviate and go around congressional intent but it would have to rewrite the statute to delete the fact that the Judicial Commission was created as an Executive one.

If this court were to rewrite the sentencing statute to place the Commission in the Executive Branch, the congressional intent to have sentencing remain a Judicial function and to remain within the Judicial Branch would be betrayed. If Congress believes the Commission should be placed in the Executive Branch, then it is up to Congress to amend the statute. Also as noted in defendant's reply, there may be several serious practical concerns with placing the Commission in the Executive Branch, such as the application of the Freedom of Information Act. Surely then, rewriting this is not something the court should do, but rather is a matter better left to Congress. Accordingly, the Government's attempt to salvage the constitutionality of the guidelines through severability fails.

■ As noted in oral argument, the Government shifted its tack and argued that for purposes of this challenge the court should only look at the functioning of the Commission, which it defined as Executive, and analyze whether this Executive Functioning Committee was constitutional. The Government urged the court to leave to another day resolution of other problems of the Commission being within the Judiciary. The court finds this argument deceptively simple and rejects it. To define this Commission as Executive Functioning does negate the *Bowsher* problem discussed earlier. However, the previously noted other constitutional impediments to such a Commission being placed in the Judiciary, problems of its composition in its duties, are unaffected by the Executive Functioning label. Further, assuming this is an Executive Functioning Commission, there are further constitutional problems.

First, there is a constitutional problem with an Executive Functioning Commission having appellate authority that's conferred upon it by the guidelines. Pursuant to 28 U.S.C. § 994(s), after a sentence is final, a defendant can write to the Commission and request a change in the guidelines. The Commission decides whether to grant or deny the request and whether such change, if granted, should be retroactive. The Commission's counsel argued at oral argument that the Commission's response to the request is not an adjudication because, if the request is granted, the new sentence would be imposed by a Judge. However, I note that if the Commission denies the request, such denial is a final adjudication. The defendant has no right of appeal from the denial. Moreover, it is extraordinary that the Commission, four of whose members are nonjudges, can decide the issue of retroactivity if the request is granted. This court knows of no other Executive or Congressional Committee possessing such broad authority to decide retroactivity. Such has historically been an issue decided by the Judiciary in the context of a case or controversy.

Second, there is the problem of Judges participating on an Executive Functioning Committee making rules which are designed to bind the Judicial Branch. Judge Brewster's decision contains a very good discussion of the qualitative and quantitative impact on the Judiciary of this Executive Function. I note that all counsel, in oral argument, agreed that there is a "bright line" which cannot constitutionally be crossed by the members of one of the three branches of government acting on behalf of another branch. The current cases give little guidance as to where that bright line is. Counsel did not provide concrete suggestions in their briefs or oral argument. I suggest the proper approach in defining that bright line, in addition to considering the qualitative and quantitative impact on the Judiciary Judge Brewster discussed, is to look at the nature of the function the Commission performs and to decide whether this function is one which historically is an important function of a branch other than the Judiciary. Assuming it is such, one would then assess how significantly the intrusion of the Judiciary into the affairs of another branch offends notions of separation of the powers. Applying this standard, I note the following. Executing laws pursuant to congressional delegation has historically been a significant job of the Executive. Making laws regarding sentencing has historically been regarded as a congressional prerogative. Although sentencing historically has been a significant function of the Judiciary, making sentencing laws has not. Assuming Congress properly delegated its authority to make sentencing laws to the Executive Branch or to an Executive Functioning Committee, having sitting Judges participate in such executive rule-making pursuant to congressional delegation violates separation of powers under a functional analysis.

I note that participation of Judges on the Commission cannot be held insignificant. As Judge Brewster noted, six of seven members of the Commission voted to implement the rules, and the six included the three Federal Judges. Certainly then, one cannot assume that the Judges' input was insignificant in making policy decisions which the Commission had to make, giving value judgments to certain factors such as what prior record is relevant for sentencing enhancement which the Commission made, as well as voting on the rules.

The question then is how significantly this intrusion violates notions of separations of powers. In the first part of my ruling I discussed the founders' desire for an independent and impartial Judiciary. The reasons discussed there apply equally in this discussion of Judges participating on an Executive or Executive Functioning Committee. In sum, the independence and the impartiality of the Judiciary are significantly eroded by such Judicial rule-making. As an aside, I note the independence of the Executive is also eroded. As Judge Brewster noted, Judicial input in the creation of guidelines could have been obtained in numerous, inoffensive ways.

In sum, I hold the presence of Judges offends the balance of, quote, separateness but interdependence, autonomy but reciprocity that the constitution envisions. That's *Youngstown Sheet and Tube Company v. Sawyer*, 343 U.S. 579, 72 S.Ct. 863, 870, 96 L.Ed. 1153. It is too severe an intrusion by members of one branch into the powers of another to withstand constitutional scrutiny. For those reasons, I do hold the sentencing law promulgated by the Sentencing Commission is unconstitutional.

Now, then, there are at this point obviously severe practical problems as to how we are going to proceed. Realistically, it is going to be a while before the Supreme Court decides whether or not the Commission is constitutional or unconstitutional. What I am going to do is the following. I am going to sentence using the new probation report that was developed in this post guideline era. Since the sentencing is in my sound discretion under the old constitutional law, I will elect to use the new report. Also, the Local Rule concerning counsel's obligation to attempt to correct this report will still apply. It's the only practical way to handle it, because if I am reversed we'd not only have to resentence

but do rereports and new hearings and everything else. If a defendant disagrees then with any factors discussed in the probation report for purposes of guidelines, he or she must raise those issues at sentencing—we'll operate under the new rules—or that issue will be waived, since I will use those reports and the guidelines and the ranges of sentences that they recommend in deciding what sentence I will impose. The only difference is that I hold that I am not bound to the guideline ranges. But I will use that report, use them as a guide in deciding what to do.

For purposes of plea bargaining then, although I have held I am not bound by the guidelines, the Supreme Court still will be the final adjudicator on that and I think this is an extremely difficult issue and certainly it could go the other way. Therefore, for purposes of negotiating pleas, defense counsel should assume that the guidelines will be imposed when they attempt to negotiate cases. They obviously will probably be imposed if I am reversed in this ruling. I am going to make sure at the time of plea that the defendant understands that although I held that I am not bound by the guidelines, I am going to consider them significantly at the time of sentencing and they should assume that they are going to be imposed either by me when they are first sentenced or by me if my ruling is reversed. So I want to make sure that they are aware of the guidelines and how they can impact on them. Basically, the only difference is that I am holding I am not bound by them, and I certainly don't feel that I am. But they will be a guide. I see no other practical way to get around sentencing.

Therefore, the motion of all defendants before me to have the guidelines declared unconstitutional is GRANTED.