UNITED STATES of America

v.

Rickey Wayne ALLEN.

No. CR 88-H-4-S.

United States District Court, N.D. Alabama, S.D.

May 18, 1988.

Frank W. Donaldson, U.S. Atty., J. Patton Meadows, Asst. U.S. Atty., Birmingham, Ala., for U.S.

Rick L. Burgess, Crittenden, ·Cochran & Stoddard, Birmingham, Ala., for defendant.

Before POINTER, HANCOCK, GUIN, HALTOM, PROPST, CLEMON and ACKER, District Judges, and LYNNE, GROOMS, and ALLGOOD, Senior District Judges.

## OPINION

PER CURIAM:

This case involves a challenge to the constitutionality of the sentencing guidelines developed by the United States Sentencing Commission (the "Commission") pursuant to the Sentencing Reform Act of 1984 (the "Act").[1]  Section 217 of the Act,

codified at 28 U.S.C. §§ 991–98, establishes the Commission "as an independent agency in the judicial branch" and defines its duties and powers, including its responsibility for promulgation of sentencing guidelines.

Because of the desirability of consistency, the judges of this court—like those in several other districts[2]—have elected to consider collectively this issue.  The matter is under submission upon written briefs filed by the parties and (as *amicus curiae*) by the Commission itself.  In addition, the court has had the benefit of numerous decisions rendered in other districts.[3]  Since many of these opinions recite the legislative history of the Act, the nature of the Commission, and the development and components of the guidelines, we will not restate that background.

### I.

We first hold that the defendant Rickey Allen, having been convicted of a post-October 1987 offense and now awaiting imposition of sentence, has standing at this time to contest the constitutionality of the sentencing guidelines as well as certain other aspects of the Act, such as the elimination of parole.

### II.

We conclude that the provisions of the Act creating and empowering the Commission impermissibly violate the principle of separation of powers embodied in the Constitution.[4]  We are mindful that the Constitution does not require "three air-

---

1. The Act, consisting of §§ 211 through 239, is Chapter II of the Comprehensive Crime Control Act of 1984, which is Title II of Pub.L. No. 98–473, 98 Stat. 1837, at 1976 (Oct. 12, 1984) (the "Crime Control Act").

2. *E.g., United States v. Bolding,* 683 F.Supp. 1003 (D.Md.1988).

3. *E.g., United States v. Arnold,* 678 F.Supp. 1463 (S.D.Cal.1988); *United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (S.D.Cal.1988); *United States v. Chambless,* 680 F.Supp. 793 (E.D.La. 1988); *United States v. Erves,* —— F.Supp. —— No. 87–478–A (N.D.Ga. Mar. 22, 1988); *United States v. Frank,* 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Estrada,* 680 F.Supp. 1312

(D.Minn.1988); *United States v. Tolbert,* 682 F.Supp. 1517 (D.Kan.1988); *United States v. Russell,* No. —— F.Supp. —— 88–7–MHS (N.D.Ga. Apr. 29, 1988); *United States v. Fonseca,* —— F.Supp. —— No. 87–00159 (S.D.Ala. May 11, 1988); *United States v. Childress,* —— F.Supp. ——, No. 87–263–N (M.D.Ala. May 16, 1988).

4. Because of this conclusion, we need not consider whether the guidelines deprive a defendant of due process of law or whether similar powers might be delegated constitutionally to another commission not in the judicial branch and without judicial members.

tight departments of government." *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977). Nevertheless, it does not permit Congress to delegate legislative or executive functions to the judicial branch, which, with narrow exceptions not applicable here,[5] is limited by Article III to deciding "cases or controversies" properly brought before the courts. See *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923); *Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *United States v. Ferreira,* 13 How. 40 (1852); *Hayburn's Case,* 2 Dall. 409, 1 L.Ed. 436 (1792). The work of the Commission cannot be viewed as a case or controversy in any sense of the phrase.

The argument that denomination of the Commission as an agency in the judicial branch is an insignificant misnomer—that the Commission should be treated as part of the executive branch—is without merit. Of the seven voting members, the Act requires at least three, and presumably authorizes all seven, to be federal judges. Service on the Commission by these judges —subject to removal by the President—can hardly be viewed as merely incidental or supplemental to performance of their judicial responsibilities. Until six years after the effective date of the guidelines, these judges are to serve on the Commission in "full-time positions," a statutory obligation that necessarily impairs, if not destroys for a substantial period of time, their ability to perform their judicial responsibilities.[6] Moreover, under 28 U.S.C. §§ 991–92, they may move their residences outside their respective districts or circuits during the period of full-time service, they may (if district judges) be paid a greater compensation than their entitlement as an Article III judge, and presumably they may be subjected to inquiry concerning their political affiliations. We further note, without

stressing, that the Attorney General (or a designee) is an ex officio, nonvoting member of the Commission and that the Commission was directed to adopt what many would view as a "pro-government perspective" regarding sentencing.

*In re Application of the President's Commission on Organized Crime (Subpoena of Scaduto),* 763 F.2d 1191, 1197 (11th Cir.1985), states the applicable standard for this circuit: Does service on this body by judges "interfere with their ability to perform their constitutionally-required duties in the branch of which they are a part"? The question must be answered affirmatively. Accordingly, even if the Commission had been formed outside the judicial branch, appointment of federal judges to such a Commission would violate the separation of powers principle.

■ The question remains whether, as in *Scaduto,* some *de facto* validity should be given to past acts of the Commission—*e.g.,* promulgation of the guidelines—despite the fact some of its members were appointed in violation of the separation of powers principle. In *Scaduto,* a divided panel issuing three separate opinions upheld a contempt order arising from a refusal to obey a court order requiring testimony in response to a subpoena issued by a Presidential advisory commission whose members included two active or retired federal judges. Although not free from doubt, we conclude that *Scaduto* does not mandate giving *de facto* validity to the guidelines with respect to sentences yet to be imposed. Several distinctions are significant: First, only *two* of *nineteen* members involved in the *Scaduto* commission were prohibited from serving on that body. Second, the *Scaduto* commission was created as part of the executive rather than judicial branch. Third, the *de facto* validity accorded in *Scaduto* was

---

**5.** The judicial branch has been permitted to develop rules of practice and procedure for court cases and to perform administrative, procedural, and ministerial functions related to the conduct by the judges of their constitutional responsibilities. The substantive work of the Commission does not fit into these exceptions. *Cf. Miller v. Florida,* — U.S. —, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (revision of state

sentencing guidelines not a mere procedural change immune from attack under ex post facto clause).

**6.** After the six-year period, only the Chairman—who, however, might be a federal judge—would serve on the Commission in a full-time capacity.

quite limited in effect—simply holding that a previously issued subpoena could be enforced by the court—whereas *de facto* validation of the guidelines would have an indefinite prospective effect on thousands of criminal cases which are pending or yet to be instituted.

Nor is *de facto* validity of the guidelines mandated by *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). In *Buckley* the Supreme Court allowed certain administrative actions of the Federal Election Commission to continue in effect notwithstanding the fact that members of that commission had been appointed in an unconstitutional manner. However, as noted by Judge Johnson in his dissent in *Scaduto*, 763 F.2d at 1206, those actions given *de facto* validity were ones that could have been legally adopted by the very same persons had they been appointed to the commission by a different method.

We hold that the sentencing guidelines developed by the Commission are unconstitutional and should not be given *de facto* validity in pending and future sentencing.[7] In reaching this conclusion, we note that one of the four non-judicial members (Commissioner Robinson) dissented from the Commission's vote to submit to Congress the guidelines. In short, if one were tempted to disregard placement of the Commission in the judicial branch and to disregard the votes by its disqualified members, the guidelines would not have been approved by an affirmative vote of at least four of its members, as required by 28 U.S.C. § 994(a).

### III.

■ The Sentencing Reform Act contains many provisions in addition to those establishing the Commission and directing the promulgation of sentencing guidelines. For example, the Act (1) specifies statutory standards and purposes for sentencing, (2) requires judges to state reasons for imposing particular sentences, (3) provides for "real time" sentences by eliminating parole, (4) forbids probation for certain types of offenses, and (5) authorizes appellate review of sentences. The defendant here has standing to challenge in this court at this time the first three of these enumerated changes from prior law and practice.[8]

■ These provisions can, with some adjustments, be given operative effect without considering the Commission or its work; and the defendant here does not challenge any of these provisions as unconstitutional in and of themselves. Accordingly, the issue is the extent, if any, these portions should be allowed to continue in effect by striking only the invalid parts of the Act. Whether the unconstitutional parts should be severed "is largely a question of legislative intent, but the presumption is in favor of severability." *Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S.Ct. 3262, 3269, 82 L.Ed.2d 487 (1984). The failure to include an explicit severability clause specifically in the Sentencing Reform Act or generally in the total Crime Control Act is ordinarily of little consequence in ascertaining this intent, though that omission may have some significance since such a specific severability clause was inserted in another title of Pub.L. No. 98–473, of which the Crime Control Act was a part.

The stated legislative history surrounding the Act, as set forth in 1984 U.S.Code Cong. & Adm.News, pp. 3182, 3220, reflects an ambivalent congressional intent on this question. Depending upon the language extracted from that history, one can find support both for the argument that Congress viewed many changes as desirable without apparent dependence on the sentencing guidelines and for the argument that Congress viewed the guidelines as the centerpiece and *sine qua non* of the composite package of sentencing reform.

Turning to the Act itself, as codified in title 18, we note that Congress included in its list of sentencing standards and pur-

---

**7.** Our ruling does not detract from our view that the Commission has demonstrated industry, creativity, intellect and good will in handling a very complex assignment.

**8.** The defendant has not been convicted of an offense for which probation is proscribed by 18 U.S.C. § 3561, and any question concerning appellate review is one that, when ripe, should be addressed initially by the Court of Appeals.

poses two references to the work of the Commission—the guidelines themselves and any pertinent policy statement. 18 U.S.C. § 3553(a)(4,5). In requiring a statement of the reasons for imposition of a particular sentence, Congress directed that this explication contain appropriate reference to the range specified by the guidelines. 18 U.S.C. § 3553(c). Although no explicit cross-reference is contained in the section repealing the provisions authorizing parole, Section 236 of the Act directs the General Accounting Office to submit a study to Congress regarding impact of the sentencing guidelines so that Congress may, *inter alia*, determine "whether the parole system should be reinstated in some form and the life of the Parole Commission extended." The decision to require "real time" sentences through abolition of parole was, in short, viewed by Congress as interrelated with the implementation and effect of guideline sentencing.

We find particularly significant the facts (1) that, when enacting this legislation in 1984, Congress postponed the effective date of these portions—though not all—of the Sentencing Reform Act for a period of time that was expected to coincide with the effective date of the sentencing guidelines [9] and (2) that Congress, when deferring in 1986 the effective date of the guidelines for one additional year, likewise postponed for the same period these other portions of the Sentencing Reform Act.[10] Neither delay would have been needed if Congress wanted, for example, to repeal the provisions regarding parole independently of guideline sentencing. In contrast, section 218(a)(8) of the Act repealed the Youth Corrections Act prior to promulgation and adoption of sentencing guidelines, indicating a Congressional intent for that repeal to be effective without regard to implementation of sentencing guidelines.

In accord with Congressional intent as may best be determined, we conclude that, although the unconstitutional parts of the Sentencing Reform Act may be severed from section 218(a)(8)—making effective the repeal of the Youth Corrections Act—such parts should not be so severed from the other portions of the Sentencing Reform Act.

## IV.

Our holding is that the establishment of the Commission and promulgation of sentencing guidelines are unconstitutional and that, although repeal of the Youth Corrections Act may be effective, the other portions of the Sentencing Reform Act currently before the court (*i.e.*, specification of sentencing purposes and standards, requirement for statement of reasons explaining why a particular sentence was imposed, and denial of opportunity for parole) are similarly ineffective with respect to sentences yet to be imposed. A separate order to this effect will be entered by the judge to whom this case is assigned; and this defendant, as well as other defendants hereafter sentenced for a crime committed after October 31, 1987, will be sentenced in this court without regard to the mandates of the Act except to the extent of the repeal of the Youth Corrections Act.

---

9. By section 235, the effective date of most portions of the Act was postponed for two years. The Commission was directed to submit the proposed guidelines within eighteen months, and six months were set aside for Congressional review.

10. See Pub.L. 99–646, 100 Stat. 3592 (Nov. 10, 1986).