### UNITED STATES of America

v.

### Dale WEIDNER.

### No. SCr. 88–15.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 11, 1988.

Rick L. Jancha, Asst. U.S. Atty., South
Bend, Ind., for plaintiff.

Stephen G. Drendall, South Bend, Ind.,
for defendant.

## MEMORANDUM AND ORDER

MILLER, District Judge.

Defendant Dale Weidner has tendered pleas of guilty to one count of manufacture of more than 100 marijuana plants and one count of possession of marijuana with intent to distribute it, pursuant to a written plea agreement in which the government agreed that the sentences shall be concurrent. Mr. Weidner faces imprisonment for concurrent terms of up to twenty years on the first count and up to five years on the second, fines totalling as much as $1,250,-000.00, special assessments of $100.00 and supervised release for at least three years.

Mr. Weidner committed these offenses on February 16, 1988, after the effective date of the sentencing guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–998. Mr. Weidner now moves to have the Act and the guidelines declared unconstitutional. For the reasons that follow, the court concludes that the Act and the guidelines are constitutional, and that Mr. Weidner's motion must be denied.

## I. INTRODUCTION

Mr. Weidner's arguments in support of his motion are contained in a brief apparently prepared by the National Association of Criminal Defense Lawyers and filed on Mr. Weidner's behalf, but ably augmented by Mr. Weidner's appointed counsel. The court notes only the arguments discussed in the brief, and declines to address points noted only in the motion. Mr. Weidner contends the guidelines are unconstitution-

al because they violate his due process right to individualized sentencing, and because they violate the principle of separation of powers.

The Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–998 ("the Act"), created the United States Sentencing Commission ("the Commission"), described as "an independent commission in the judicial branch of the United States", 28 U.S.C. § 991(a), and directed the Commission to promulgate and distribute sentencing guidelines to be applied in the courts of the United States. 28 U.S.C. § 994(a)(1). The Commission promulgated such guidelines, which became effective November 1, 1987.

District courts throughout the nation have addressed the guidelines' constitutionality. The divergence of the holdings reached by those courts underscores the difficulty of the issues. According to the Solicitor General's brief in support of certiorari in *United States v. Johnson*, 682 F.Supp. 1033 (W.D.Mo.), *cert. granted sub nom. United States v. Mistretta*, — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988), as of May 11, 1988, twenty-one district courts had upheld the guidelines' constitutionality, and twenty-nine had found the guidelines unconstitutional. The split between the courts is not as close in the reported opinions. As of August 5, 1988, the guidelines had been declared unconstitutional in fourteen published opinions[1] and upheld in only four[2]; a WESTLAW inquiry about the same time disclosed a total of thirty-two opinions striking down the guidelines as unconstitutional[3] and six-

---

**1.** *United States v. Russell*, 685 F.Supp. 1245 (N.D.Ga.1988); *United States v. Diaz*, 685 F.Supp. 1213 (S.D.Ala.1988); *United States v. Perez*, 685 F.Supp. 990 (W.D.Tex.1988); *United States v. Allen*, 685 F.Supp. 827 (N.D.Ala.1988); *United States v. Lopez–Barron*, 685 F.Supp. 725 (S.D.Cal.1988); *United States v. Ortega Lopez*, 684 F.Supp. 1506 (C.D.Cal.1988); *United States v. Elliott*, 684 F.Supp. 1535 (D.Colo.1988); *United States v. Martinez–Ortega*, 684 F.Supp. 634 (D.Idaho 1988); *United States v. Bolding*, 683 F.Supp. 1003 (D.Md.1988) (en banc); *United States v. Molander*, 683 F.Supp. 701 (W.D.Wis. 1988); *United States v. Tolbert*, 682 F.Supp. 1517 (D.Kan.1988); *United States v. Frank*, 682 F.Supp. 815 (W.D.Pa.1988); *United States v. Es-*

*trada*, 680 F.Supp. 1312 (D.Minn.1988); *United States v. Arnold*, 678 F.Supp. 1463 (S.D.Cal. 1988).

**2.** *United States v. Richardson*, 685 F.Supp. 111 (E.D.N.C.1988); *United States v. Johnson*, 682 F.Supp. 1033 (W.D.Mo.), *cert. granted sub nom. United States v. Mistretta*, — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988); *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988); *United States v. Chambless*, 680 F.Supp. 793 (E.D.La.1988).

**3.** In additional to those cited in note 1, *supra*, (cases listed alphabetically by defendant): *United States v. Alafriz*, 690 F.Supp. 1303 (S.D.N.Y.

teen opinions upholding the guidelines.[4] Even those statistics are over-simplified, because the courts have ruled on varying grounds.

The numerous courts that already have addressed the guidelines' constitutionality have ably set forth the provisions of the Act, the guidelines, and the provisions for membership of the Commission. Repetition of those provisions here would do no more than lengthen this opinion; accordingly, the court assumes familiarity with the Act and the guidelines.

## II. DUE PROCESS

Mr. Weidner appears to raise three interrelated arguments in support of his claim that the guidelines deprive him of due process of law.

### A.

Arguing from a framework of history and tradition, Mr. Weidner contends that he has a right to individualized sentencing in which the sentencing court may exercise discretion. He appears to cite *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), for the proposition that such a right exists, but *Williams* provides no such authority. *Williams* holds only that when a judge exercises such discretion, he or she may consider material presented in a presentence report.

In *United States v. Ortega Lopez*, 684 F.Supp. 1506, 1513 (C.D.Cal.1988) (en banc), the court found that the guidelines violate a due process right to individualized sentencing:

... the mechanical formulas and resulting narrow ranges of sentences prescribed by the Guidelines violate defendants' right to due process of law under the Fifth Amendment by divesting the Court of its traditional and fundamental function of exercising its discretion in imposing individualized sentences according to the facts of each case.

The *Ortega Lopez* court cited *United States v. Barker*, 771 F.2d 1362 (9th Cir. 1985), as authority for this holding. *Barker*, though, addressed a different issue: whether a district judge to whom sentencing discretion has been given may abdicate that discretion by imposing maximum sentences based on "the category of crime, rather than the culpability of each individual criminal ..." 771 F.2d at 1366. That a sentencing judge may not abdicate discretion does not mean that the constitution requires that sentencing judges be given discretion.

The guidelines do not give rise to the sort of mechanistic sentencing challenged in *Barker*. While the crime presents the starting point for determining a sentence under the guidelines, §§ 1B1.1(a), (b), the

---

4. In addition to those cited in note 2, *supra* (cases listed alphabetically by defendant): *United States v. Alves*, 688 F.Supp. 70 (D.Mass.1988); *United States v. Amesquita–Padilla*, 691 F.Supp. 277 (W.D.Wash.1988); *United States v. Belgard*, 694 F.Supp. 1488 (D.Or.1988); *United States v. Etienne*, 1988 WL 49250 (E.D.N.Y.1988); *United States v. Franco*, 691 F.Supp. 1040 (E.D.Ky.1988); *United States v. Kerr*, 686 F.Supp. 1174 (W.D.Pa. 1988); *United States v. Landers*, 690 F.Supp. 615 (W.D.Tenn.1988); *United States v. Myers*, 687 F.Supp. 1403 (N.D.Cal.1988) (striking provision for commissioners' removal as unconstitutional); *United States v. Seluk*, 691 F.Supp. 525 (D.Mass. 1988); *United States v. Smith*, 686 F.Supp. 1246 (W.D.Tenn.1988); *United States v. Sparks*, 687 F.Supp. 1145 (E.D.Mich.1988); *United States v. Whitfield*, 689 F.Supp. 954 (D.Minn.1988).

1988); *United States v. Bogle*, 689 F.Supp. 1121 (S.D.Fla.1988) (en banc); *United States v. Brodie*, 686 F.Supp. 941 (D.D.C.1988); *United States v. Dibiase*, 687 F.Supp. 38 (D.Conn.1988); *United States v. Fonseca*, 686 F.Supp. 296 (S.D.Ala. 1988); *United States v. Horton*, 685 F.Supp. 1479 (D.Minn.1988); *United States v. Kane*, 691 F.Supp. 341 (N.D.Ga.1988); *United States v. Mendez*, 691 F.Supp. 656 (S.D.N.Y 1988); *United States v. Molina*, 688 F.Supp. 819 (D.Conn.1988) (en banc); *United States v. Olivencia*, 688 F.Supp. 1483 (S.D.N.Y.1988); *United States v. Rosario*, 687 F.Supp. 426 (N.D.Ill.1988) (Bua, J.); *United States v. Scott*, 689 F.Supp. 1319 (D.N.M. 1988); *United States v. Serpa*, 688 F.Supp. 1398 (D.Neb.1988) (en banc); *United States v. Smith*, 686 F.Supp. 847 (D.Colo.1988); *United States v. Sumpter*, 690 F.Supp. 1274 (S.D.N.Y.1988); *United States v. Terrill*, 688 F.Supp. 542 (W.D. Mo.1988); *United States v. Williams*, 691 F.Supp. 36 (M.D.Tenn.1988) (en banc); *United States v. Wilson*, 686 F.Supp. 284 (W.D.Okla. 1988).

guidelines also require consideration of the victim, the defendant's role in the offense, the defendant's obstruction of justice or acceptance of responsibility, and criminal history. Although the court agrees with the *Ortega Lopez* court's observation, discussed below, that the guidelines restrict the sentencing court's ability to weigh factors relating to offender and offense, the court cannot agree that *Barker* supports the existence of a due process right to individualized sentencing.

The Supreme Court has never recognized a due process right to individualized sentences in non-capital cases, and the Seventh Circuit has expressly held that no such right exists. *United States v. McCoy*, 770 F.2d 647, 649 (7th Cir.1985); *United States v. Oxford*, 735 F.2d 276, 278 (7th Cir.1984). In *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), a capital case, the plurality opinion prefaced its discussion by stating, "We begin by recognizing that the concept of individualized sentencing in criminal cases generally, although not constitutionally required, has long been accepted in this country." *Id.* at 602, 98 S.Ct. at 2963. "Although legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases ... this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Id.* at 603–604, 98 S.Ct. at 2964. "We recognize that, in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Id.* at 604–605, 98 S.Ct. at 2964–65. This case, of course, is not a capital case.

Accordingly, the court concludes that Mr. Weidner has no due process right to an individualized, discretionary sentence. As noted in *United States v. Elliott*, 684 F.Supp. 1535, 1539 (D.Colo.1988), which held the guidelines unconstitutional, "Congress could mandate specific penalties for particular crimes leaving the sentencing court with no discretion in determining the deprivation of liberty resulting from a conviction." *See also United States v. Gray-*

*son*, 438 U.S. 41, 45, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978) ("In the early days of the Republic ... the period of incarceration was generally prescribed with specificity by the legislature. Each crime had its defined punishment.").

### B.

Mr. Weidner appears to raise an additional due process argument found in some of the cases addressing the guidelines' constitutionality. While Congress could require imposition of a specific sentence for a specific offense, such as four years for everyone convicted of mail fraud, the Sentencing Reform Act does not prescribe such specific sentences for specific offenses. The statutory penalty for mail fraud remains imprisonment from zero to five years. 18 U.S.C. § 1341.

As long as the prescribed sentence for an offense affords some sentencing discretion, due process concerns may remain. Some courts have found that the guidelines infringe that remaining due process right. In *United States v. Frank*, 682 F.Supp. 815, 818–819 (W.D.Pa.1988), the court found that the guidelines deprived defendants of the due process right to challenge the basis of a sentence "before a court which has the authority to weigh the evidence and determine an appropriate sentence." In *United States v. Martinez–Ortega*, 684 F.Supp. 634, 636 (D.Idaho 1988), the court held, "the negation of the sentencing judge's discretion violates the due process clause by preventing the defendant from having an opportunity to convince the sentencing judge that there are circumstances which override the point allocations of the Guidelines." Similarly, in *United States v. Elliott*, 684 F.Supp. at 1541, the court held, "it is a denial of due process in that the defendant has no opportunity to convince the sentencing judge that there are circumstances which override these point allocations."

If such a right exists, the Act and the guidelines preserve it. 18 U.S.C. § 3553(a)(4) requires sentencing courts to consider "the kinds of sentences and the sentencing range established for the appli-

cable category of offense committed by the applicable category of defendant as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced ..." 18 U.S.C. § 3553(b), however, provides that,

> The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

The Commission also recognized the authority of sentencing courts to depart from the guidelines on the basis of unusual or extraordinary circumstances. The introductory section of the guidelines, § 1A4(b), discusses departures at length. Section 1B1.1(i) directs the court to refer to other sentencing considerations. Section 1B1.7 specifically notes that Commentary sections "may suggest circumstances which, in the view of the Commission, may warrant departure from the guidelines." The phrasing of the policy statements with respect to specific offender characteristics provides ample room for departure in the unusual case. §§ 5H1.1–5H1.6 ("not *ordinarily* relevant") (emphasis added).

A related argument succeeded in *United States v. Bolding,* 683 F.Supp. 1003 (D.Md. 1988) (en banc).[5] The *Bolding* court held that the Act deprived defendants of due process, not because of any constitutional right to individualized sentences, but because,

> ... when a definite sentence is not statutorily mandated, a defendant being deprived of his liberty pursuant to a statute

which sets a sentencing range is constitutionally entitled to an articulated exercise of discretion by the judge before whom he appears rather than to the mechanical application of formulae adopted by non-constitutional commissioners invisible to him and to the general public. The essence of due process is accountability, reason and a fair opportunity to be heard. These cannot be replaced by any administrative code, however extensively considered or precisely drawn.

683 F.Supp. at 1005. *Accord, United States v. Brodie,* 686 F.Supp. 941 (D.D.C. 1988); *see also United States v. Tolbert,* 682 F.Supp. 1517, 1522 (D.Kan.1988) ("Simply said, Congress can no more appoint an unelected commission to initiate, write and thereafter monitor the sentencing laws of this nation than I can appoint a similarly facilitated commission to decide this case!").

The court cannot agree that seven Commissioners appointed by the President with the advice and consent of the Senate are "invisible" to the defendant or to the general public. Moreover, for the reasons set forth above, the court disagrees that the defendant's sentence must be determined solely by a "mechanical application of formulae"; ample opportunity is afforded the sentencing court to consider factors unique to the defendant's case or which received insufficient weight in the guidelines.

### C.

■ Finally, Mr. Weidner argues that the guidelines violate his "inherent due process right to individualized sentencing consideration in order to effectuate the well settled constitutional notion that Defendants may not be sentenced on the basis of materially inaccurate information." (De-

---

**5.** The *Bolding* court also held that when Congress does not specify a sentence but instead creates a range of potential sentences, it creates "a sphere of discretionary power which is inherently judicial in nature." 683 F.Supp. at 1004. The court concluded that the Act effectively transferred that inherently judicial power to the Commission, which owes its allegiance to the Congress and the President, thus violating the principle of separation of powers. The court does not understand Mr. Weidner to raise this argument. In any event, for the reasons set forth below in discussion of Mr. Weidner's separation of powers arguments, the court does not find the *Bolding* analysis persuasive, because the Commission is an independent agency in the judicial branch. The judicial branch's exercise of judicial powers does not constitute a separation of powers violation.

fendant's Memorandum at 8). Mr. Weidner has a right not to be sentenced on the basis of material, untrue information. *Townsend v. Burke*, 334 U.S. 736, 740–741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 866–869 (7th Cir.1984). Mr. Weidner does not suggest, however, how the guidelines threaten that right.

Indeed, the guidelines and the Act appear to provide increased security for that right. Under pre-guidelines law, lesser explanations of sentences were permissible, *United States v. Sato*, 814 F.2d 449, 452 (7th Cir.), *cert. denied* —— U.S. ——, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987), reviewing courts sometimes resorted to speculation to determine the information upon which a sentence was based, *United States v. Serhant*, 740 F.2d 548, 553 (7th Cir.1984), and sentencing judges had considerable discretion in determining the methods by which defendants could challenge relevant facts. *United States v. Papajohn*, 701 F.2d 760 (8th Cir.1983). The guidelines and the Act, however, require specification of reasons and factual underpinnings of sentences:

> In current practice, factors relevant to sentencing are often determined in an informal fashion. The informality is to some extent explained by the fact that particular offense and offender characteristics rarely have a highly specific or required sentencing consequence. This situation will no longer exist under the sentencing guidelines. The court's resolution of sentencing factors will usually have a measurable effect on the applicable punishment. More formality is therefore unavoidable if the sentencing process is to be accurate and fair.

*Commentary*, Guidelines § 6A1.3; *see also* 18 U.S.C. § 3553(c)(1) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence is of the kind, and within the range [called for by the guidelines], and that range exceeds 24

months, the reason for imposing a sentence at a particular point in the range.").

### D.

For the foregoing reasons, the court concludes that the sentencing guidelines do not deprive Mr. Weidner of the constitutional guarantee against loss of liberty without due process of law.

### III. SEPARATION OF POWERS

Mr. Weidner weaves several themes in his argument that the Act violates the principle of separation of powers. The separation of powers principle is based on the recognition, which Madison articulated in *The Federalist No. 47*, that the accumulation of legislative, executive and judicial powers in the same hands "may justly be pronounced the very definition of tyranny." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57, 102 S.Ct. 2858, 2864, 73 L.Ed.2d 598 (1982).[6] Accordingly, the Constitution divided the federal government into three branches in an attempt to ensure that each branch would confine itself to its assigned responsibility. *I.N.S. v. Chadha*, 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983).

■ The Constitution does not, however, require "a hermetic sealing off of the three branches of Government from one another", *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976), or that the separate powers operate with absolute independence. *United States v. Nixon*, 418 U.S. 683, 707, 94 S.Ct. 3090, 3107, 41 L.Ed.2d 1039 (1974). Instead, it contemplates that "practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (Jackson, J., concurring). Accordingly, the Supreme Court consistently has upheld del-

---

**6.** Madison also wrote in *The Federalist No. 47* that Montesquieu's model of separation of powers was based on the idea that "where the *whole* power of one department of the government is exercised by the same hands which possess the *whole* power of another department, the fundamentals of a free constitution are subverted." (emphasis in original).

egations of legislative authority to the executive branch or to independent agencies. *National Cable Television Ass'n, Inc. v. United States,* 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370 (1974); *Yakus v. United States,* 321 U.S. 414, 426–427, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944).

In *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1977), the Court rejected as archaic the appellant's contention that there must be a complete division of authority between the branches, and stated that a court must inquire into the extent to which a statute prevents one branch from accomplishing its constitutionally assigned functions.

Congress seems to have exercised considerable practical wisdom through the Act. The sentencing function traditionally has lain within the spheres of influence of each of the branches of government:

—The legislative branch, which announced the sentencing policies to be implemented through the Act, traditionally has set the maximum, and in some instances the minimum, sentence to be imposed for an offense. *See United States v. Estrada,* 680 F.Supp. 1312 (D.Minn. 1988) (rejecting a challenge to the five-year minimum sentence required by 21 U.S.C. § 841(b)(1)(B)).

—The judicial branch, in which Congress placed the Commission and which provides several members of the Commission, traditionally has found relevant facts for sentencing purposes and weighed them in determining the sentence to be imposed within the confines of statutory provisions. *See United States v. Brubaker,* 663 F.2d 764 (7th Cir.1981) (sentencing judge permissibly weighed considerations of deterrence more heavily than defendant's good works and support from many people).

—The executive branch, which has powers of appointment and removal with respect to the Commission's membership and provides at least two *ex officio* Commission members, traditionally has exercised the clemency power, augmented by the parole system. *See United States v.*

*Addonizio,* 442 U.S. 178, 190 [99 S.Ct. 2235, 2243, 60 L.Ed.2d 805] (1979) ("the judge has no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term").

Nevertheless, any such practical wisdom receives little weight in analyzing a separation of powers claim under current law. *See* G. Miller, *Independent Agencies,* 1986 Sup.Ct.Rev. 41, 52–58. "[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if is contrary to the Constitution. Convenience and efficiency are not the primary objectives—or the hallmarks—of democratic government ..." *I.N.S. v. Chadha,* 462 U.S. 919, 944, 103 S.Ct. 2764, 2780, 77 L.Ed. 2d 317 (1983); L. Liman, *The Constitutional Infirmities of the United States Sentencing Commission,* 96 Yale L.J. 1363 (1987).

Mr. Weidner argues, and various courts have agreed, that the Act violates the principle of separation of powers in several ways; some of these arguments rely upon the unique nature of the judicial branch in the tripartite structure under Article III. Mr. Weidner's arguments cannot easily be separated for purposes of analysis. The court deems it appropriate, then, to proceed by consideration of a series of questions to be resolved pursuant to the principles of Article III and separation of powers doctrine:

A. Could any agency perform the tasks assigned to the Commission?

B. If so, is there any constitutional impediment to the placement of such an agency in the judicial branch?

C. If not, does it offend Article III or the separation of powers doctrine for Article III judges to serve on the agency?

D. If not, does it offend Article III or the separation of powers doctrine for non-Article III persons to comprise a majority of the agency's voting members?

E. If not, does it offend Article III or the separation of powers doctrine for the President to have the authority to remove the agency's voting members?

### A.

Congress purported to create "an independent commission in the judicial branch of the United States", 28 U.S.C. § 991(a). Mr. Weidner contends that because the Commission engages in activities other than "cases or controversies", it cannot be placed in the judicial branch without offending Article III. *Accord, United States v. Russell*, 685 F.Supp. 1245, 1248–1249 (N.D.Ga.1988); *United States v. Diaz*, 685 F.Supp. 1213, 1216 (S.D.Ala.1988); *United States v. Perez*, 685 F.Supp. at 990, 995–996 (W.D.Tex.1988); *United States v. Lopez–Barron*, 685 F.Supp. at 725, 728 (S.D. Cal.1988); *United States v. Allen*, 685 F.Supp. 827, 829 (N.D.Ala.1988); *United States v. Molander*, 683 F.Supp. 701, 705–706 (W.D.Wis.1988); *United States v. Tolbert*, 682 F.Supp. at 1523–1525; *United States v. Frank*, 682 F.Supp. 815, 821 (W.D.Pa.1988); *United States v. Estrada*, 680 F.Supp. at 1318–1329; *United States v. Arnold*, 678 F.Supp. 1463, 1469–1470 (S.D. Cal.1988).

The Department of Justice agrees that the Commission cannot exist constitutionally within the judicial branch, but argues that the Commission may, through severance, be placed in the executive branch. (Government's Memorandum at 13–16). *See Alaska Airlines v. Brock*, 480 U.S. 678, 107 S.Ct. 1476, 1480–1481, 94 L.Ed.2d 661 (1987), Only one published opinion has adopted this approach. *United States v. Johnson*, 682 F.Supp. 1033 (W.D.Mo.), *cert. granted sub nom. United States v. Mistretta* — U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920 (1988). Mr. Weidner disagrees, arguing that severance is impermissible and that a commission with Article III judge-commissioners removable by the President cannot constitutionally reside within the executive branch.

A threshold question is whether, without regard to membership, removal or branch assignment, an agency may be assigned the tasks of the Commission without violating the separation of powers doctrine. The court also must consider whether Congress has run afoul of the nondelegation doctrine in attempting to do so, and turns first to that issue.

### 1.

■ Mr. Weidner maintains that Congressional delegation to an administrative agency of the power to determine sentences violates the nondelegation doctrine. To delegate to other bodies the authority to act as rulemaker, Congress must establish the policies underlying the delegated power, set out primary standards or intelligible principles and sufficiently define a framework of the policy. *National Cable Television, Inc. v. United States*, 415 U.S. 336, 94 S.Ct. 1146, 39 L.Ed.2d 370; *Schecter Poultry Co. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1934). Mr. Weidner argues, in a conclusory manner, that Congress has not done so in the Act.

The government responds that the nondelegation doctrine, which the Supreme Court has used but twice to invalidate delegations of legislative authority, is of limited application. The doctrine renders unconstitutional only those delegations plagued by an absence of standards such that it would be impossible to ascertain whether Congressional will has been obeyed. *Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

Mr. Weidner's nondelegation argument has been singularly unsuccessful in the reported decisions of the courts that have considered similar arguments. *See United States v. Richardson*, 685 F.Supp. 111, 113–114 (E.D.N.C.1988); *United States v. Johnson*, 682 F.Supp. at 1034 ("The unlawful delegation contention has been rejected in both the California decisions referred to below. Defendants' counsel concedes that no district judge has yet announced acceptance of that claim."); *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411, 1415–1418 (S.D.Cal.1988); *United States v. Chambless*, 680 F.Supp. 793, 795–797 (E.D. La.1988). Even courts that have found the guidelines unconstitutional on other grounds have concluded that Congress provided the Commission with ample standards and intelligible principles. *United*

*States v. Russell,* 685 F.Supp. at 1247–1248; *United States v. Ortega Lopez,* 684 F.Supp. at 1514 ("Congress' delegation to the Commission to promulgate sentencing guidelines includes abundant guidance and direction sufficient to satisfy even this purported higher standard"); *United States v. Molander,* 683 F.Supp. at 704–705; *United States v. Tolbert,* 682 F.Supp. at 1520–1523; *United States v. Arnold,* 678 F.Supp. at 1466–1469.

■ The court finds persuasive the nondelegation analyses in *United States v. Ruiz–Villanueva,* 680 F.Supp. at 1415–1418, and *United States v. Arnold,* 678 F.Supp. at 1466–1469. The Act contains exceedingly specific direction to the Commission[7]; indeed, some provisions arguably are excessively binding. *E.g.,* 28 U.S. C. § 994(b) ("If a sentence specified by the guidelines includes a term of imprisonment, the maximum of the range established for such a term shall not exceed the minimum of that range by more than the greater of 25 percent or 6 months ...").

### 2.

If, as found above, Congress has articulated sufficiently the tasks the Commission is to perform, the court next must determine whether the nature of those tasks offends the separation of powers doctrine. Stated differently, the court must resolve whether any agency, however constituted and in whatever branch, can perform the work assigned to the Commission.

It has been held that the Commission exercises executive authority because it interprets the Act, issues and administers rules and provides training. *United States v. Ortega Lopez,* 684 F.Supp. at 1510; *United States v. Molander,* 683 F.Supp. at 705; *United States v. Johnson,* 682 F.Supp. at 1034–1035; *United States v. Tolbert,* 682 F.Supp. at 1523–1525; *United States v. Chambless,* 680 F.Supp. at 801; *United States v. Frank,* 682 F.Supp. at 821; *United States v. Arnold,* 678 F.Supp. at 1469. *See Bowsher v. Synar,* 478 U.S. 714, 733, 106 S.Ct. 3181, 3192, 92 L.Ed.2d 583 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of execution of the law").

It also has been held that the Commission exercises legislative authority because it develops new and general rules for application outside of any specific case or controversy.[8] *United States v. Russell,* 685 F.Supp. at 1249; *United States v. Diaz,* 685 F.Supp. at 1216; *United States v. Perez,* 685 F.Supp. at 996; *United States v. Estrada,* 680 F.Supp. at 1321–1322. *See also United States v. Allen,* 685 F.Supp. 827 (simply holding that the Commission's work is not judicial, without stating whether it is executive or legislative).

Courts have also held that the Commission exercises judicial power because it

---

**7.** In *United States v. Estrada,* 680 F.Supp. at 1317, the court wrote,

> Under the Constitution, the responsibility for and the authority to make law rests within the legislative branch. Accordingly, only the legislative branch possesses the ultimate authority to define federal crimes and to prescribe the punishment for those crimes. *United States v. Wiltberger,* 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820). Congress, however, may delegate that authority consistent with the requirements of the Constitution. Indeed, Congress has historically chosen to prescribe maximum sentences for most federal crimes and to leave to individual judges the task of determining the actual sentence imposed.

If such delegation to the judicial branch is permissible virtually without explanation as to how judges are to exercise their sentencing discretion, the detailed delegation to the Sentencing Commission cannot be said to lack intelligible standards.

**8.** This distinction may be too facile. For example, in *United States v. Scalzo,* 716 F.2d 463, 468 (7th Cir.1983), the court took the following approach to sentencing procedures:

> Although we eventually obtained and reviewed the confidential reports in this case and were generally able, due to Judge Crabb's handwritten notations on them, to discern the portions upon which she did or did not rely, the process of appellate review would be greatly facilitated if the procedures required in the Fifth Circuit were followed.... We therefore adopt those procedures for prospective application in this circuit.

(footnote omitted). It is doubtful that this language could be construed as an exercise of legislative authority simply because the court fashioned a rule for prospective application.

works in aid of the sentencing function. *United States v. Ruiz–Villanueva,* 680 F.Supp. at 1419–1420; *United States v. Bolding,* 683 F.Supp. 1003 (holding the Act unconstitutional because it transfers judicial power to commission); *cf. United States v. Richardson,* 685 F.Supp. 111 (Commission's functions are judicial and legislative).

■ Agencies wielding executive, legislative and judicial authority are not new phenomena on the constitutional horizon. In *Humphrey's Executor v. United States,* 295 U.S. 602, 628, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935), the Court described one such agency:

> The Federal Trade Commission is an administrative body created by Congress to carry into effect legislative policies embodied in the statute in accordance with the legislative standard therein prescribed, and to perform other specified duties as a legislative or as a judicial aid. Such a body cannot in any proper sense be characterized as an arm or an eye of the executive. Its duties are performed without executive leave and, in the contemplation of the statute, must be free from executive control.... [T]he commission acts in part quasi-legislatively and in part quasi-judicially. In making investigations and reports thereon for the information of Congress under § 6, in aid of the legislative power, it acts as a legislative agency. Under § 7, which authorizes the commission to act as a master in chancery under rules prescribed by the court, it acts as an agency of the judiciary. To the extent that it exercises any executive function—as distinguished from executive power in the constitutional sense—it does so in the discharge and effectuation of its quasi-legislative or quasi-judicial powers, or as an agency of the legislative or judicial departments of the government.

The law repeatedly has recognized the continuing existence of such agencies, *see, e.g., Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.,* 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568 (1948); *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285,

76 L.Ed. 598 (1932); K. Davis, *Administrative Law Treatise* §§ 2:1–2:9 (2d ed. 1978), although constitutional challenges based on the separation of powers doctrine have been few. G. Miller, *Independent Agencies,* 1986 Sup.Ct.Rev. 41, 45–50. To hold that Congress cannot, consistent with the separation of powers, create an agency that would address sentencing practices through the exercise of executive, administrative and judicial power indirectly would challenge the existence of all executive and independent agencies. The court concludes that the Congressional blending of executive, legislative and judicial powers in the Sentencing Commission does not, standing alone, offend the separation of powers.

## B.

Having determined that an agency such as the Commission may exist without fundamental infringement of the separation of powers doctrine, the court next must inquire whether, setting aside issues of membership and removal provisions, such an agency may exist within the judicial branch. While the government contends that the Commission properly should be placed within the executive branch, the court must first determine whether the Congressional decision offends the Constitution. The district court in *United States v. Diaz,* 685 F.Supp. 1213, relying upon *In re Sealed Case,* 838 F.2d 476 (D.C.Cir. 1988), and language from *Buckley v. Valeo,* 424 U.S. at 123, 96 S.Ct. at 684, held that Congress cannot delegate legislative or executive authority to the judiciary. In light of *Morrison v. Olson,* — U.S. —, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), however, this court can find no inherent constitutional impediment to the placement of Commission within the judicial branch.

The inquiry divides into two sub-parts: (a) May Congress delegate to the judicial branch any responsibility other than resolution of cases and controversies? (b) If it may do so, may Congress delegate to the judicial branch the particular tasks assigned to the Commission?

1.

Article III, § 1 of the Constitution provides that, "The judicial power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Article III, § 2 sets forth the types of cases and controversies over which the judicial power extends. The Supreme Court, however, has demonstrated that the power of the judicial branch is not strictly limited to resolution of cases and controversies.

For example in *Chandler v. Judicial Council*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970), the Court considered a challenge to an action of a Judicial Council, pursuant to 28 U.S.C. § 332, blocking assignment of cases to a district judge. In an instructive footnote appended to a jurisdictional discussion, the Court stated:

> We find nothing in the legislative history to suggest that the Judicial Council was intended to be anything other than an administrative body functioning in a very limited area in a narrow sense as a "board of directors" for the circuit. Whether that characterization is valid or not, we find no indication that Congress intended to or did vest traditional judicial powers in the Councils. We see no constitutional obstacle preventing Congress from vesting in the Circuit Judicial Councils, as administrative bodies, authority to make "all necessary orders for the effective and expeditious administration of the business of the courts within [each] circuit."

398 U.S. at 86 n. 7, 90 S.Ct. at 1654 n. 7. The 1939 Act that created the Judicial Councils also created the Administrative

Office of the United States Courts, a "purely 'administrative' agency ... which was to be an arm of the judicial branch of the government and under the direct control of the Supreme Court and the Judicial Conference of the United States." *Id.* at 102, 90 S.Ct. at 1662 (Harlan, J., concurring).

In *Matter of Certain Complaints Under Investigation*, 783 F.2d 1488, 1503–1506 (11th Cir.), *cert. denied* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986), the court rejected a claim that the separation of powers principle was violated by Congressional delegation of the subpoena power to a Judicial Council committee investigating an Article III judge's alleged conduct prejudicial to the effective and expeditious administration of the business of the courts. 28 U.S.C. § 372(c)(1). The appellants contended that such delegation allowed the judicial branch to engage in executive activities. The court found "no authority for the proposition that courts' administrative and investigatory activities, limited to consideration of their own conduct and efficiency, are to be labelled as 'executive' simply because non-adjudicative in character." 783 F.2d at 1504. The court cited several other examples of Congressional delegation of administrative duties to the judicial branch.[9]

Congress has been held to have the power to regulate the practice and procedure of federal courts, which it may exercise by delegation to federal courts to make rules not inconsistent with the Constitution or federal law. *Sibbach v. Wilson & Co.*, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941). The court agrees with those courts that have held that the sentencing guidelines are substantive, *Miller v. Florida*, —— U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987),

**9.** The court in *Matter of Certain Complaints Under Investigation* held:

Under Article III, the judicial power is vested in one Supreme Court "and in such inferior Courts as the Congress may from time to time ordain and establish." Pursuant to its latter power to ordain and establish inferior courts, Congress has enacted many laws placing administrative duties on judges and supporting personnel in the judicial branch. For example, a chief judge of a circuit court is empowered to designate judges to sit in different courts within the circuit, 28 U.S.C. § 292(b), and, in recent times, circuit councils and circuit executives have been granted a variety of powers. 28 U.S.C. § 332. Chief judges, circuit councils, court executives and clerks of court all hold, by law, specified court management responsibilities, the exercise of which are presumably believed by Congress to be "necessary and proper," Art. I, § 8, in order to "ordain and establish" those inferior courts sharing in the "judicial power" under Article III.

783 F.2d at 1504.

unlike the Federal Rules of Civil Procedure and Federal Rules of Criminal Procedure, which are procedural. *United States v. Russell*, 685 F.Supp. at 1248–1249; *United States v. Diaz*, 685 F.Supp. at 1217; *United States v. Lopez–Barron*, 685 F.Supp. at 728; *United States v. Ortega Lopez*, 684 F.Supp. at 1511; *United States v. Molander*, 683 F.Supp. at 705–706; *United States v. Tolbert*, 682 F.Supp. at 1524. That distinction, however, simply anticipates the second part of the question: whether the assignment to the judiciary of these particular non-judicial tasks is permissible. It does not defeat the conclusion, which the court accepts following review of the foregoing cases, that Congress may delegate non-judicial tasks to the judicial branch.

2.

The Supreme Court has articulated no simple test for determining whether the delegation of a specific non-judicial task to the judicial branch offends Article III. The question obviously is to be decided on a case-by-case basis. Earlier cases, however, lend guidance.

In *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), the Court rejected a claim that the "independent counsel" provisions of the Ethics in Government Act, 28 U.S.C. §§ 591–599, violated Article III by assigning to the judicial branch certain responsibilities with respect to the appointment of an independent counsel.[10] The Court rejected the contention that the statute violated Article III by requiring federal judges to appoint and oversee the independent counsel.[11] The Court addressed the issue by noting the comparable responsibilities of Article III judges in the day-to-day business of the courts. Justice Harlan employed a similar analysis in his concurring opinion in *Chandler v. Judicial Council*, 398 U.S. at 108–111, 90 S.Ct.

at 1666–67, when he concluded that 28 U.S.C. § 332 assigned Judicial Councils tasks within the capacities of judicial bodies under Article III because those tasks related to judicial administration, a matter in which the courts have special competence. In *United States v. First City National Bank*, 386 U.S. 361, 369–370, 87 S.Ct. 1088, 1094, 18 L.Ed.2d 151 (1967) the Court held that determination of whether a proposed merger was outweighed by considerations of community convenience and need was a task within "the area of judicial competence", and so raised no serious constitutional problems.

■ If, as these cases suggest, the issue is governed by determining whether the delegated non-judicial task bears sufficient similarity to judicial activities as to fall within the sphere of judicial competence, the court concludes that the tasks assigned to the Commission may be placed within the judicial branch consistent with Article III. The Commission was assigned to develop sentencing guidelines and policy statements concerning the weight to be given to various factors in sentencing, consistent with the principles articulated by Congress. Federal judges performed such tasks on a daily basis in sentencing defendants under pre-guideline law. Judges regularly were called upon to assess various factors with respect to a particular case, such as the nature of the offense, the defendant's role in the offense, the defendant's criminal record and acceptance of responsibility, and determine the factors' impact upon the exercise of informed discretion in sentencing. Judges also were permitted to "compare the sentences imposed on other criminals in the same jurisdiction". *Solem v. Helm*, 463 U.S. 277, 291, 103 S.Ct. 3001, 3010, 77 L.Ed.2d 637 (1983); *cf. Unit-*

---

**10.** The Ethics in Government Act calls for appointment of an independent counsel, who acts in a prosecutorial role, by a special court appointed by the Chief Justice of the United States.

**11.** The Court noted that many of the duties assigned to the judges are analogous to traditionally judicial functions such as deciding whether to allow disclosure of grand jury proceedings, extending a grand jury's investigation and awarding attorney's fees. The Court con-

cluded that when properly construed, the statute's grant of authority to terminate the office does not offend Article III. Finally, the Court concluded that the Act poses no threat to the impartial and independent federal adjudication of claims with the judicial power, in part because the statute bars the judges of the Special Division from hearing any matters concerning the "independent counsel".

ed States v. Sato, 814 F.2d 449, 453–454 (7th Cir.), *cert. denied* —— U.S. ——, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). These tasks of the Commission are sufficiently similar to judicial activities as to fall within the sphere of judicial competence.

The Commission also was assigned to perform administrative tasks not unlike those assigned to the Administrative Office of the United States Courts; the assignment of such tasks would not seem to offend Article III. Finally, the Commission was directed to engage in training programs, seminars and workshops. While judges commonly are called upon to speak or lecture lawyers and other judges, one might argue that such tasks bear no resemblance to traditional judicial duties. However, as the Court stated in *Glidden Co. v. Zdanok*, 370 U.S. 530, 583, 82 S.Ct. 1459, 1490, 8 L.Ed.2d 671 (1962), "Certainly the status of a District Court or Court of Appeals would not be altered by a mere congressional attempt to invest it with such insignificant nonjudicial business; it would be equally perverse to make the status of [the Sentencing Commission] turn upon so minuscule a portion of [its] purported functions."

Accordingly, the court concludes that placement in the judicial branch of an agency with the Commission's tasks does not offend Article III. The court also must determine whether such placement violates the "function" test for separation of powers violations as defined in *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), but that determination is better made with respect to the participation of Article III judges on the Commission.

### C.

The court next must inquire whether the presence of Article III judges on the Commission violates Article III or the separation of powers. The Act requires that at least three of the Commission's seven "members shall be Federal judges [appointed by the President with the Senate's advice and consent,] selected after considering a list of six judges recommended to the President by the Judicial Conference of the United States." 28 U.S.C. § 991(a).

In *Buckley v. Valeo*, 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976), the Court, to underscore the importance of the separation of powers principle as applied to selection of members of the Federal Election Commission, stated, "The Court has held that executive or administrative duties of a nonjudicial nature may not be imposed on judges holding office under Art. III of the Constitution." As demonstrated above, the cases have not swept as broadly as this statement would suggest. In *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 2612, 101 L.Ed.2d 569 (1988), the Court explained that the "purpose of this limitation is to help insure the independence of the Judicial Branch and to prevent the judiciary from encroaching into areas reserved for other branches". Accordingly, the court turns to the separation of powers test set forth in *Nixon v. Administrator of General Services*, 433 U.S. at 443, 97 S.Ct. at 2790:

... in determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions.... Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives with the constitutional authority of Congress.

Mr. Weidner argues that the Act and the guidelines impair the judiciary's function by removing three Article III judges from service without replacement and by threatening the appearance of impartiality of the judiciary. *Accord, United States v. Russell*, 685 F.Supp. at 1249–1251; *United States v. Diaz*, 685 F.Supp. at 1218–1219; *United States v. Perez*, 685 F.Supp. at 997–999; *United States v. Allen*, 685 F.Supp. at 829–830; *United States v. Lopez–Barron*, 685 F.Supp. at 729–731; *United States v. Elliott*, 684 F.Supp. at 1539–1540 (rejecting argument that limited removal of three judges impairs function of judicial branch);

*United States v. Ortega Lopez*, 684 F.Supp. at 1511–1512; *United States v. Molander*, 683 F.Supp. at 708; *United States v. Tolbert*, 682 F.Supp. at 1525–1527; *United States v. Frank*, 682 F.Supp. at 822–823; *United States v. Estrada*, 680 F.Supp. at 1329–1336; *United States v. Arnold*, 678 F.Supp. at 1470–1472.[12]

### 1.

The Supreme Court decided *Morrison v. Olson*, — U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), after Mr. Weidner filed his first brief and after each of the district court opinions cited in this memorandum. *Morrison* reversed *In re Sealed Case*, 838 F.2d 476 (D.C.Cir.1988), upon which Mr. Weidner and several of the district court decisions have relied at least in part. *See United States v. Russell*, 685 F.Supp. at 1248, 1250; *United States v. Diaz*, 685 F.Supp. at 1215; *United States v. Perez*, 685 F.Supp. at 998–999; *United States v. Tolbert*, 682 F.Supp. at 1523–1525; *United States v. Estrada*, 680 F.Supp. at 1332–1333.

■ *Morrison* seems to foreclose any argument that the removal of three judge-commissioners from the active federal judiciary impairs the judiciary's function, whether the removal be deemed temporary (limited by the duration of their service on the Commission) or permanent (because of the suggestion that the judge-commissioners must recuse themselves in all guidelines cases). The *Morrison* Court relied on the removal of the judges of the special court to hold that the Ethics in Government Act did not impair the judiciary's function: "We think both the special court and its judges are sufficiently isolated by these statutory provisions from the review of the activities of the independent counsel so as to avoid any taint of the independence of

the judiciary such as would render the Act invalid under Article III." 108 S.Ct. at 2615.

Further, even apart from *Morrison*, the court is unconvinced that a temporary removal of three judges from a judiciary that now numbers more than 800 is such as to prevent the judicial branch from accomplishing its constitutionally assigned functions.

Mr. Weidner argues that the participation of Article III judges in formulating the sentencing guidelines impairs the function of the judicial branch by stripping it of impartiality, or at least the appearance of impartiality: "Where the Judges have written the rules, the loss of neutrality must be assumed." (Defendant's Memorandum at 13, *citing In re Sealed Case*, 838 F.2d 476). Several courts have agreed with this proposition, although on varying theories.

■ In *United States v. Estrada*, 680 F.Supp. at 1332, the court found a loss of impartiality because the judge-commissioners are in "continuous contact with the members of the executive branch as they participate in the setting of policy", and, because they comprise a minority of the Commission, are subject to "the clear constant influence of the executive branch in their decision-making process." This court disagrees. Congress placed the Commission in the judicial branch; accordingly, the judge-commissioners deliberate, not with members of the executive branch, but with members of the judicial branch.[13]

In *United States v. Tolbert*, 682 F.Supp. at 1527, the court found that the impartiality of the judge-Commissioners will impair the remainder of the federal judiciary:

> The disqualification or recusal of individual judges, however, will not alleviate the effect the judges' service on the com-

---

**12.** In *United States v. Bolding*, 683 F.Supp. 1003 (D.Md.1988) (en banc), the court rejected this argument while holding the guidelines unconstitutional on other grounds.

**13.** Other courts have expressed concern that a permanent working relationship between the judiciary and the executive branch in the area of criminal law threatens the judiciary's independence. *United States v. Lopez-Barron*, 685 F.Supp. 725, 731 (S.D.Cal.1988); *United States v.*

*Ortega Lopez*, 684 F.Supp. 1506, 1512 (C.D.Cal. 1988); *United States v. Arnold*, 678 F.Supp. 1463, 1472 (S.D.Cal.1988). Assuming these courts refer to relationships with persons other than the Commission's members, the court perceives no greater threat posed by the Act than by other daily relationships between the judiciary and the executive, such as the impaneling and extension of grand juries.

mission has on the impartiality of other judges. As pointed out by one commentator, the judges who are most likely to be appointed to presidential commissions are often those who are the most highly respected and influential. Thus, the appointment of such judges to the commission may have a subtle effect upon other judges whose task it is to consider the work product of the commission.

*See also United States v. Perez,* 685 F.Supp. at 999 ("Commissioners are called upon to prepare interpretive materials and to teach the proper application of the Guidelines. In this role, the Commissioner–Judges may influence other judges by any bias they carry as a result of participating in the creation and implementation of the Guidelines.").

Assuming, without accepting, that federal judges as a group lack the ability to separate the quality of speech from the quality of the speaker, and assuming further that federal judges tend to hew unquestioningly to the words of their fellow judges, the court disagrees with the *Tolbert* court's analysis. If a presidential commission is constitutional with judge-members, it cannot become unconstitutional because those judge-members are influential; if a presidential commission is unconstitutional because the quality of its membership will weigh too heavily with the judiciary, it should not matter whether that influence stems from judge-members or influential non-judges.

Mr. Weidner also places heavy reliance on *Application of President's Com'n on Crime,* 763 F.2d 1191 (11th Cir.1985) ("*Scaduto* "), which considered the participation of Article III judges on the President's Commission on Organized Crime. The *Scaduto* court concluded that because participation in an executive probe into organized crime would impair the objectivity of the Article III members of the commission, the conferral of such powers on federal judges violated the separation of powers doctrine. Many of the courts that have found the guidelines unconstitutional have relied on *Scaduto* in doing so. *United States v. Russell,* 685 F.Supp. at 1250–1251; *United States v. Diaz,* 685 F.Supp. at 1217–1219;

*United States v. Perez,* 685 F.Supp. at 998; *United States v. Allen,* 685 F.Supp. at 829–830; *United States v. Ortega Lopez,* 684 F.Supp. at 1511–1512; *United States v. Molander,* 683 F.Supp. at 705; *United States v. Tolbert,* 682 F.Supp. at 1526–1527; *United States v. Frank,* 682 F.Supp. at 822–823; *United States v. Estrada,* 680 F.Supp. at 1333–1334; *United States v. Arnold,* 678 F.Supp. at 1471.

The government notes the Third Circuit's contrary holding in *Matter of President's Com'n on Organized Crime Subpoena of Scarfo,* 783 F.2d 370 (3d Cir.1986) ("*Scarfo* "), which focused on the voluntary nature of the judges' participation on the commission, and concluded that the nonjudicial powers were not "conferred" on judicial officers. The court also noted that "care must be taken not to confuse ethical considerations and accepted notions of propriety in judicial conduct with constitutional imperatives". 783 F.2d at 379. The court cannot agree, however, with the government's proposition that the participation of Article III judges on the Commission is "voluntary": the three judge-commissioners are commissioners because they are judges; the Act so requires.

Nonetheless, for two reasons, the court does not believe that *Scaduto* supports a finding that the guidelines are unconstitutional. First, the Commission is an agency within the judicial branch, not an executive commission. Second, while participation on a commission assigned the task of investigating organized crime and suggesting ways to combat it is inconsistent with the role of an impartial judge, the issue of sentencing is not inconsistent with the role of an impartial judge. Sentencing is not a prosecutorial function; it is not an executive function. *Scaduto* does not support a holding that an Article III judge may not serve on a Sentencing Commission within the judicial branch.

The court cannot find that the Act's requirement that Article III judges serve on the Commission violates the separation of powers doctrine. It does not impair or

prevent any branch of government from performing its constitutional function.

### 2.

■ Mr. Weidner also argues that the requirement that Article III judges serve on a Commission that performs tasks other than resolving cases and controversies violates Article III. However, *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569, makes clear, while earlier law did not, that a properly constituted entity within the judicial branch may perform duties other than resolving cases or controversies without offending the Constitution. *Morrison* specifically upheld a statute requiring that Article III judges perform duties outside the definition of cases or controversies.

### D.

■ In *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the plurality held that only Article III judges may wield Article III power. Article III judges do not comprise the majority of the Commission. The vote of at least one non-Article III commissioner is necessary for the Commission to act. Mr. Weidner contends, and some courts have held, that the need for that vote violates Article III and the separation of powers doctrine. *United States v. Lopez–Barron*, 685 F.Supp. at 728; *United States v. Elliott*, 684 F.Supp. at 1539; *United States v. Martinez–Ortega*, 684 F.Supp. at 636; *United States v. Bolding*, 683 F.Supp. at 1005 n. 3.

The vitality of this argument, however, depends upon a proposition that the court rejected above: that an agency in the judicial branch can perform only those duties specified in Article III. This proposition cannot stand in light of *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569, and *Chandler v. Judicial Council*, 398 U.S. 74, 90 S.Ct. 1648, 26 L.Ed.2d 100 (1970). Agencies in the judicial branch can perform non-Article III duties; accordingly, *Northern Pipeline* presents no impediment to the performance of those duties by non-Article III officers. That the Commission's four non-Article III members could

act without concurrence of a judge-commissioner, or that the judge-commissioners cannot act without concurrence of a non-Article III officer, becomes constitutionally significant only if the action to be taken would amount to an exercise of the Article III power to decide cases and controversies.

The Commission, however, does not decide cases and controversies. In *United States v. Lopez–Barron*, 685 F.Supp. at 730, the court found that the Commission exercises judicial power pursuant to 28 U.S.C. § 994(s):

> The Commission shall give due consideration to any petition filed by a defendant requesting modification of the guidelines utilized in the sentencing of such defendant, on the basis of changed circumstances unrelated to the defendant, including changes in—
>
> (1) the community view of the gravity of the offense;
>
> (2) the public concern generated by the offense; and
>
> (3) the deterrent effect particular sentences may have on the commission of the offense by others.
>
> Within one hundred and eighty days of the filing of such petition the Commission shall provide written notice to the defendant whether or not it has approved the petition. If the petition is disapproved the written notice shall contain the reasons for such disapproval. The Commission shall submit to the Congress at least annually an analysis of such written notices.

28 U.S.C. § 994(u) provides that, "If the Commission reduces the term of imprisonment recommended in the guidelines applicable to a particular offense or category of offenses, it shall specify the circumstances and by what amount the sentences of prisoners serving terms of imprisonment for the offense may be reduced."

Section 994(s), combined with § 994(u), might be read to give the Commission adjudicatory powers. Section 994(s), however, only applies to sentenced defendants' recommendations for change based on circumstances unrelated to their case. According-

ly, § 994(s) also might be construed as only giving sentenced defendants a right to a written response from the Commission under certain circumstances. Section 994(*o*) obligates the Commission to receive and consider other suggestions for changes in the guidelines, but no written response is required.[14] A statute that merely affords a right to a written response from an agency cannot be said to imbue the agency with Article III powers. Federal statutes, of course, are to be construed so as to avoid serious doubt of their constitutionality. *Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 841, 106 S.Ct. 3245, 3252, 92 L.Ed.2d 675 (1987); *Machinists v. Street*, 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141 (1961).

Accordingly, the court concludes that while the work of the Commission aids the judicial function of sentencing, warranting its placement within the judicial branch, the Commission does not exercise Article III powers. *Accord, United States v. Ruiz–Villanueva*, 680 F.Supp. at 1425.

### E.

The Act provides that, "The Chairman and members of the Commission shall be subject to removal from the Commission by the President only for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a).

### 1.

Mr. Weidner argues, and several courts have agreed, that the Act interferes with the independence of the Commission, and hence the judicial branch, because it vests in the President the power to remove Commissioners for cause. *United States v. Diaz*, 685 F.Supp. at 1219; *United States*

*v. Elliott*, 684 F.Supp. at 1539; *United States v. Martinez–Ortega*, 684 F.Supp. at 636; *United States v. Tolbert*, 682 F.Supp. at 1525.

Mr. Weidner premises this argument on *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), which considered certain provision of the Deficit Reduction Act. The *Bowsher* Court held that Congress cannot reserve for itself the power of removal of an officer charged with the execution of the laws except by impeachment. Congress placed responsibility for execution of the Deficit Reduction Act with the Comptroller General. Because Congress retained the removal authority over the Comptroller General, he could not be entrusted with executive powers; hence, that portion of the Deficit Reduction Act was held to be unconstitutional.

A similar argument failed, however, in *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). The Ethics in Government Act presented the Court with an arrangement whereby the legislative branch authorized the judicial branch to appoint an inferior officer removable by the executive under only limited circumstances. The Court rejected the argument that the statute's limits on the executive's right to remove an inferior officer with executive duties violated the separation of powers doctrine. The Court distinguished *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583, and *Myers v. United States*, 272 U.S. 52, 47 S.Ct. 21, 71 L.Ed. 160 (1926), because Congress made no attempt to reserve removal power to itself. *Accord, Commodity Futures Trading Com'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 3261, 92 L.Ed.2d 675 (1986) ("Unlike

---

**14.** 28 U.S.C. § 994(*o*) provides:

The commission periodically shall review and revise, in consideration of comments and data coming to its attention, the guidelines promulgated pursuant to the provisions of this section. In fulfilling its duties and in exercising its powers, the Commission shall consult with authorities on, and individual and institutional representatives of, various aspects of the Federal criminal justice system. The United States Probation System, the Bureau of Prisons, the Judicial Conference of the United States, the Criminal Division of the

United States Department of Justice, and a representative of the Federal Public Defenders shall submit to the Commission any observations, comments, or questions pertinent to the work of the Commission whenever they believe such communication would be useful, and shall, at least annually, submit to the Commission a written report commenting on the operation of the guidelines, suggesting changes in the guidelines that appear to be warranted, and otherwise assessing the Commission's work.

*Bowsher,* this case raises no question of the aggrandizement of congressional power at the expense of a coordinate branch.").

The Sentencing Reform Act, unlike the Deficit Reduction Act at issue in *Bowsher,* presents no Congressional effort to reserve to itself the power to remove an officer. *Bowsher* does not resolve the constitutionality of the Sentencing Reform Act's provision for removal of commissioners. Other than the various district court opinions discussed above addressing the guidelines' constitutionality, which this court cannot treat as controlling, *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1123–24 (7th Cir.1987), Mr. Weidner has cited no case that considers the permissibility of executive removal of members of an independent agency in the judicial branch. The government, which makes no effort to defend the Commission's placement in the judicial branch, offers no cases touching on the removal issue.

*Morrison* offers further assistance, however. A provision of the Ethics in Government Act allows the special court to terminate the independent counsel's position if it finds the counsel's job is completed. 28 U.S.C. § 596(b)(2). The *Morrison* Court first considered whether such a grant of authority to the judicial branch violated Article III. The Court considered the issue a close one, but concluded that if the removal provision were construed narrowly to apply only when a lingering independent counsel sought to remain on the payroll after completing her investigation, the provision was constitutional: "So construed, the Special Division's power to terminate does not pose a sufficient threat of judicial intrusion into matters that are more properly within the Executive's authority to require that the Act be invalidated as inconsistent with Article III." 108 S.Ct. at 2614–2615. The Court considered the sepa-

ration of powers argument and held that the Ethics in Government Act worked no judicial usurpation of executive powers. 108 S.Ct. at 2621.

Unlike the Ethics in Government Act at issue in *Morrison,* the Act involves a Congressional effort to give the executive the right to remove an official of an independent agency of the judicial branch.

*Humphrey's Executor v. United States,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), considered the provisions for removal of a commissioner of the Federal Trade Commission, which the Court described as acting "in part quasi-legislatively and in part quasi-judicially", and which "cannot in any proper sense be characterized as an arm or an eye of the executive". 295 U.S. at 628, 55 S.Ct. at 874. The Court upheld a provision for removal by the President for good cause. Whether the executive could remove a commissioner at all was not at issue; the Court considered only the legislatively-imposed limitations on executive removal. Nonetheless, it remains that the Court upheld a statute vesting in the executive a limited power of removal of an official of a non-executive agency.[15]

*Humphrey's Executor* teaches that the executive has no inherent unfettered right of removal of officers of an independent agency. It provides only indirect support for the proposition that Congress may grant the executive a limited power to remove officers of an independent agency in the judicial branch. No Supreme Court case, however, supports the proposition that Congress may not do so. The court is reluctant to invalidate an Act of Congress in the absence of such authority.

*Morrison* teaches that Congress may, in some circumstances, grant to one branch of the government a limited right to remove

**15.** The Court since has conceded that Federal Trade Commission was a least a bit "executive". *Morrison v. Olson,* 108 S.Ct. at 2618 n. 29.

A somewhat different issue arose in *Wiener v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958). A member of the War Claims Commission received a letter of the sort Mr. Humphrey had received twenty years before: a new President wanted to replace him

with one of his own choosing. The War Claims Act, however, contained no provision for removal. The Court examined the legislative history and the nature of the Commission's duties and concluded that the President had no power to remove a member of the adjudicatory body "for no reason other than that he preferred to have on that Commission men of his own choosing." 357 U.S. at 356, 78 S.Ct. 15 1279.

officials within the authority of another branch, although *Bowsher* prohibits Congress from reserving that right to itself. Reading *Morrison* with *Humphrey's Executor*, the court concludes that if the independence of the judicial branch is not unduly affected, the Constitution provides no categorical bar to Congress's granting the executive a limited right of removal of officials of an independent agency in the judicial branch.

 The Act's removal provision does not impair the judicial function or aggrandize executive power. The President's right to remove commissioners is narrowly confined to specific circumstances. Some provision for removal of commissioners is necessary. *See, e.g., United States v. Lopez-Barron,* 685 F.Supp. at 729 ("there is a practical problem with severance of the President's removal power. If such is severed, how would an incompetent Commission member be removed?"). The Act's provision for limited removal power by the executive is more circumscribed than some provisions that Congress has deemed appropriate to vouchsafe other agencies' independence, 12 U.S.C. § 242 (Federal Reserve System's Board of Governors); 12 U.S.C. § 1437(b) (Federal Home Land Bank Board); 15 U.S.C. § 78d(a) (Securities and Exchange Commission); 47 U.S.C. § 151 *et seq.* (Federal Communications Commission), and comparable to other such provisions, 15 U.S.C. § 41 (Federal Trade Commission); 49 U.S.C. § 11 (Interstate Commerce Commission). The Act's removal provision adequately protects, and does not impair, the independence of the independent agency in the judicial branch.

### 2.

 Mr. Weidner also posits that lodging the removal power in the President violates due process, but he presents no additional argument in support of this proposition. The argument appears to rely on *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583, but *Bowsher* addressed no due process issues. Further, as noted in the preceding paragraphs, *Bowsher* does not control a Congressional grant, as distinct from a Congressional reservation, of the removal power. Mr. Weidner has demonstrated no due process violation.

### 3.

The President's power to remove members of the Commission under limited, specified circumstances violates neither separation of powers principles nor the Due Process Clause.

### IV. CONCLUSION

For the foregoing reasons, the court concludes that the Act does not violate the constitutional principle of separation of powers and that neither the Act nor the guidelines promulgated thereunder deprive the defendant of his right to due process of law. Accordingly, the court now DENIES the defendant's motion to declare the sentencing guidelines unconstitutional.

SO ORDERED.